IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MEEHAN, | : | CIVIL NO. 3:CV-04-0495 |
| Petitioner, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, | : | |
| ET AL., | : | |
| Respondents | : | |

## MEMORANDUM AND ORDER

### I. Introduction

Michael Meehan ("Meehan"), a Pennsylvania state inmate serving a sentence imposed by the Court of Common Pleas of Lycoming County, Pennsylvania, filed this petition for writ of habeas corpus on March 8, 2004, pursuant to 28 U.S.C. § 2254, challenging the denial of parole. (Doc. 1). Named as respondents are the Pennsylvania Board of Probation and Parole (Parole Board) and Gerald J. Pappert, Attorney General of Pennsylvania.

On July 7, 2004, a Memorandum and Order were issued granting the petition to the extent that the matter was remanded to the Pennsylvania Board of Probation and Parole to afford Meehan a new parole hearing in accordance with the pre-1996 statute and corresponding rules. The petition was denied in all other respects. Further, inasmuch as he asserted civil rights claims, they were dismissed without prejudice to his right to pursue them in a civil rights action.

Respondent filed an appeal. On June 9, 2006, the Third Circuit Court of Appeals filed a Mandate (Doc. 88) vacating the grant of habeas relief and remanding the matter for further proceedings consistent with Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d

282 (3d Cir. 2005), an opinion of which this court did not have the benefit because it was decided more than one year after we granted relief to Meehan. For the reasons that follow, Meehan's request for habeas relief will be denied.

## II. Background

In 1990, the Court of Common Pleas of Lycoming County sentenced Meehan to six years and eleven months to fourteen years of incarceration for Aggravated Assault, and a term of eleven months to two years for Terroristic Threats, which was to run consecutively to the Aggravated Assault sentence. (Doc. 24, Ex. 1). Based upon an effective date of May 19, 1989, his sentence carried a minimum date of April 19, 1996, and a maximum date of May 19, 2005. (*Id.*)

On July 28, 1997, Meehan was released on parole. (Doc. 24, Ex. 2). However, on October 5, 1998, he was declared delinquent because two of his urine samples had tested positive for opiates and cocaine. Shortly thereafter, following notification that Meehan had been arrested on several occasions on Driving Under the Influence (DUI) charges, a "Warrant to Commit and Detain" was issued by the Parole Board. (Doc. 24, Exs. 6-8, 10). In December 1999, Meehan pled guilty to three counts of DUI and was sentenced to a total of ninety days to twenty-three months, effective February 29, 2000. Earlier in February 2000, Meehan was recommitted as a technical parole violator, and sentenced to twelve months backtime. Then, based upon the DUI convictions, the Parole Board recommitted Meehan as a convicted parole violator in April 2000 and ordered him to serve twelve months backtime. Each of the parole violator terms was to be served concurrently.

Upon service of his ninety-day minimum on the DUI sentences, Meehan was released and his custody was transferred to the Parole Board. At the time he filed his petition, he had been considered for reparole, and refused, on July 25, 2001, January 14, 2002 and February 7, 2003. (Doc. 24, Exs. 13-16).

## III. Discussion

Article I, Section 9, clause three of the United States Constitution prevents Congress from passing *ex post facto* laws. The proper focus of an *ex post facto* inquiry is whether a legislative change retroactively alters the definition of criminal conduct or increases the penalty by which a crime is punishable. *See California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 (1995).

Meehan argues that his denials of reparole violated the *ex post facto* clause of the United States Constitution due to a 1996 amendment to 61 Pa.Stat. §331.1, the statute governing parole standards. At the time of his conviction, the statute read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this Act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

61 Pa.Stat. §331.1 (pre-1996). In 1996, the statute was amended and now reads as follows:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders

3

> from prison. In providing these benefits to the criminal justice system, the Board shall first and foremost seek to protect the safety of the public. In addition to this goal, the Board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control, and treatment of paroled offenders.

61 Pa.Stat. § 331.1 (post-1996).

The Third Circuit has held that in order to obtain relief on an *ex post facto* claim, a Pennsylvania state prisoner "must show *both* a retroactive change in law or policy *and* that this change caused individual disadvantage" by creating "a significant risk of increasing his punishment.'" Richardson v. Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 284 (3d Cir. 2005) (citing Garner v. Jones, 529 U.S. 244, 255 [] (2000); Mickens-Thomas [v. Vaughn, 321 F.3d [374] at 393). The Richardson Court added that it was not sufficient for a prisoner to merely "show that the Board relied on a new law or policy." Id. Rather, the inmate must show that he was personally disadvantaged.

The February 7, 2003 decision indicated that Meehan had been interviewed and that a review of the file had taken place. (Doc. 24, Ex. 15). The parole board cited the Department of Corrections' recommendation and Meehan's prior history of supervision failures as the reasons for the decision to deny. (Id.). He was also informed that at his next review, the Board would review his file and consider his written version of the offense, whether he successfully completed his treatment program, whether he received a favorable recommendation for parole from the Department of Corrections, and whether he received a clear conduct report and completed the Department of Corrections' prescriptive programs. It is clear from a review of the decision that the application of harsher laws or guidelines did not cause the denial of parole.

4

There is no indication that either public safety or the fair administration of justice was a controlling factor in the decision to deny parole. Further, as aptly stated by respondent, "Meehan's case, on its facts, show that he has not been treated differently under the 1996 Act. In fact, he was granted parole in 1997. Because of his repeated bad behavior - three DUIs, one disorderly conduct, and a variety of technical parole violations - Meehan was recommitted to prison in the year 2000. Given his abysmal record while on parole the first time, he cannot, with a straight face, allege that he would likely have been accorded parole again within three years had it not been for the 1996 amendments." (Doc. 98, p. 7). Because Meehan has failed to make any showing that he was individually disadvantaged by the retroactive application of the 1996 Amendments, he has not established an *ex post facto* violation and his petition for writ of habeas corpus will be denied.[1]

An appropriate order will issue.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

---

[1] Meehan generally states that "the evidence will show that he did suffer an individual disadvatage [sic] that the P[ennsylvania] B[oard of] P[robation and] P[arole] did retroactively apply the post 1996 parole statutes to petitioner's parole application both before and after this court granted the writ of habeas corpus on July 7, 2004." (Doc. 90, p. 2). He provides no evidence in support of this statement. Further, the documents he seeks to compel (Doc. 87) the Board to produce may provide statistical evidence concerning general denials of parole for various categories of inmates since the enactment of the 1996 amendments, but will not demonstrate how Meehan was personally disadvantaged.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MEEHAN, | : | CIVIL NO. 3:CV-04-0495 |
| Petitioner, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, | : | |
| ET AL., | : | |
| Respondents | : | |

## ORDER

AND NOW, to wit, this 25th day of July 2006, it is hereby **ORDERED** that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. The Clerk of Court is directed to TERMINATE all pending motions (Docs. 85-87, 89-90, 101-102).

3. The Clerk of Court is further directed to CLOSE this case.

3. There is no basis for the issuance of a certificate of appealability. See 28 U.S.C. § 2253(c).

BY THE COURT:

s/ James M. Munley
James M. Munley,
United States District Judge